UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSE CASTILLO<br><br>       Plaintiff,<br><br>       v.<br><br>JUSTIN KLITCH, in his individual capacity; CHRISTOPHER COTRELL; in his individual capacity; and the IDAHO STATE POLICE; a political subdivision of the State of Idaho,<br><br>       Defendants. | Case No. 1:15-cv-00172-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment (Dkt. 11). The Court conducted a hearing on the motion on July 18, 2016. At the hearing, the Court denied Defendant's Motion for Summary Judgment as to Castillo's § 1983 claim, as well as qualified immunity for Officer Klitch. The Court took the rest of the motion under advisement, and now issues the following decision.

## BACKGROUND

Plaintiff Jose Castillo is an Arizona resident who suffers from Obsessive Compulsive Disorder ("OCD"). *Pl. Response* at 2 (Dkt. 13). His OCD causes him to use various sanitizing products on his body and possessions, including his vehicle. Although Castillo previously worked as a park ranger for many years, his OCD has prevented him

MEMORANDUM DECISION AND ORDER-1

from working recently. Castillo therefore receives full disability benefits from the Social Security Administration. *Id.*

In May 2014, Castillo travelled from Arizona to Oregon to visit an acquaintance. During the trip, Officer Klitch stopped Castillo just outside of Boise, Idaho. Officer Klitch claims that he pulled Castillo over for swerving in his lane and for failing to move over or slow down for an emergency vehicle. *Def. Memo.* at 7 (Dkt.11-1). Officer Klitch began the traffic stop by inquiring about Castillo's trip. Officer Klitch eventually asked Castillo about his shorts which had unusual snaps attached to them. *Pl. Resp.* at 5 (Dkt. 13). Castillo explained to Officer Klitch that he suffered from OCD, and that he did not want his pants to touch the ground. *Id.*

Officer Klitch also smelled Lysol disinfectant emanating from the vehicle and inquired about it. *Klitch Dep.* p. 45 (Dkt. 13-4). Castillo explained that he used Lysol because of his OCD. *Id.* at 45-45. Wary of this explanation, Office Klitch believed that Castillo used Lysol to mask the smell of drugs or other substances. *Id.* at 48-49. Officer Klitch then called in Officer Cottrell to conduct a drug dog sniff. *Id.* at 49. Officer Cottrell arrived approximately three minutes after the initial stop occurred. *Pl. Memo.* at 6 (Dkt. 13).

After Officer Cottrell arrived, Officer Klitch ordered Castillo out of the car and told him that the officers were going to conduct a drug sniff. *Id.* Officer Cottrell then ran the dog around the vehicle. *Id.* The dog alerted to Castillo's passenger side door. *Klitch Dep.* at 52-53. Officer Klitch then frisk searched Castillo. *Pl. Memo.* at 6. Officer Klitch then searched Castillo's vehicle. *Id.* During the search, Officer Klitch made a series of

MEMORANDUM DECISION AND ORDER-2

what can only be described as insulting or derogatory statements related to germs and Castillo's OCD. The stop lasted about 25 minutes. Officers Cottrell and Klitch found no drugs or other contraband in Castillo's vehicle and did not issue any traffic citations. *Id.* at 7.  Castillo later filed his complaint, alleging § 1983 violations and ADA violations against the Idaho State Police and officers Klitch and Cottrell. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case."  *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings.  *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt

MEMORANDUM DECISION AND ORDER-3

unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

### I.   ADA CLAIMS

To state an ADA claim, a plaintiff must show (1) that he is a qualified individual with a disability; and (2) by reason of such disability, has been excluded from participation in or been denied benefits of the services, programs, or activities of a public entity; *or* has been subjected to discrimination by any such entity. 42 U.S.C. § 12132. Defendants have not contested Castillo's disability or their status as a public entity. Instead, Defendants argue that the ADA does not apply to investigatory stops because it

MEMORANDUM DECISION AND ORDER-4

would be unreasonable for officers to ignore suspicious conduct which a criminal suspect claims is a symptom of a disability.

Statutory interpretation must always begin with the plain language of the statute. *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008). "But the text is only the starting point." *Kelly v. Robinson*, 479 U.S. 36, 43 (1986).  In construing a statute, courts "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Id*. "If the statute's terms are ambiguous, [courts] may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1133 (9th Cir. 2009) (internal quotation marks omitted).

The Ninth Circuit has broadly interpreted the ADA. The Ninth Circuit has held that the ADA's broad language brings within its scope "anything a public entity does." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002); *see also Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998) (finding that "the phrase 'services, programs, or activities' encompasses virtually everything that a public entity does"). Moreover, the second clause of § 12132, "or be subjected to discrimination by any such entity," is a "catch-all phrase that prohibits all discrimination by an entity, regardless of context." *Zimmerman v. Or. DOJ*, 183 F.3d 1161, 1165 (9th Cir. 1999).

Citing *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014), Castillo suggests he has stated a claim under the ADA because the officers knew about

MEMORANDUM DECISION AND ORDER-5

his OCD, but misperceived it and used it as a basis for detention.[1] In *Sheehan*, the Ninth Circuit explained that courts have recognized two types of ADA claims arising from arrests: "(1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* Castillo asserts only the first theory, arguing that police misperceived symptoms of his OCD as criminal activity.

But unlike *Sheehan*, this case does not involve an arrest. Castillo was pulled over, subjected to some interrogating questions, a dog sniff of his vehicle, and a search of his vehicle, but ultimately released without a citation. He was not arrested. That is not to say there are no circumstances short of an arrest where the ADA applies. Although *Sheehan* addressed only whether the ADA applies to arrests, this Court can envision circumstances where the ADA could apply based upon police behavior which falls short of an arrest but is more than a simple traffic stop.

---

[1] *Sheehan* was recently addressed by the Supreme Court, but the court declined to answer the question of whether the ADA applies to arrests. *City & Cnty. Of S.F. v. Sheehan*, 135 S. Ct. 1765, 1772-74 (2015) (Dismissed in part, reversed in part, and remanded on other grounds). In that case, the Supreme Court explained that the question of whether the ADA applies to arrests is an important question, but because all the parties in that case accepted that it does, "it would not be prudent to decide the question in this case." *Id at 1773.* But the underlying *Sheehan* case was a Ninth Circuit case, and the Ninth Circuit concluded that the ADA does apply to arrests. *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014). This Court is bound to follow Ninth Circuit law where there is no Supreme Court precedent.

MEMORANDUM DECISION AND ORDER-6

In general, a traffic stop is a relatively brief encounter, more analogous to a *Terry* stop than to a formal arrest. *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (Internal citations omitted.)  The duration of a traffic stop is generally determined by the seizure's "mission," addressing a traffic violation and attending to related safety concerns. *Id*. A routine traffic stop typically involves inspecting a license and registration, checking proof of insurance, running a warrant check, and possibly issuing a citation. *Id.* at 1615. But a dog sniff is not typically part of the mission, and it may not unreasonably prolong the duration of the stop. *Id*; see also *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). If a dog sniff or other police behavior unreasonably prolongs the stop because of a suspect's disability, the ADA is likely violated.

But this is not that case. Although Castillo was subjected to a dog sniff, search of his car, and some derogatory comments about his OCD by Officer Kiltch, he was only detained for approximately 25 minutes, and then free to leave without a citation. Even taking the facts in the light most favorable to Castillo, a 25-minute stop was not unreasonable. And Castillo's disability is not the type which an officer can easily understand or recognize. Thus, it was not unreasonable for the officer to question what is otherwise odd behavior but for Castillo's disability, or even to call for a dog sniff when that behavior involves using Lysol which can be used to mask the odor of illegal drugs – particularly when the dog sniff did not significantly delay the duration of the stop. To be clear, some of the officer's comments were more derogatory than investigatory, but that does not turn this into a case where the officer arrested or unreasonably detained the

MEMORANDUM DECISION AND ORDER-7

plaintiff because he misperceived the effects of his disability as criminal activity. Accordingly, the Court will grant summary judgment on the ADA claims.

## II.  FAILURE TO TRAIN/SUPERVISE

Castillo also makes a § 1983 claims against the Idaho State Police for failure to train.  "Local governmental entities may be liable under § 1983 when 'action pursuant to official municipal policy of some nature causes a constitutional tort.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir. 1992) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). The "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388-89, (1989). In this case, Castillo claims that there was a policy of inaction in regard to training officers about interactions with disabled citizens.

To prevail on a § 1983 claim, Castillo must allege: (1) that he was deprived of his constitutional rights by defendants acting under color of state law; (2) that defendants have customs or policies which amount to deliberate indifference to constitutional rights; (3) and that these policies are the "moving force" behind the constitutional violations. *Oviatt*, 954 F.2d at 1474 (citing *City of Canton*, 489 U.S. at 389-91).

The problem with Castillo's claim is that he has not pointed to anything in the record showing inadequate training of Officer Klitch as the "moving force" behind his treatment of Castillo. Even if ISP did not train officers about the ADA, Castillo has not shown anything beyond Officer Klitch's potential hostility toward him or people with OCD.  Even if Officer Klitch's treatment of Castillo is considered unprofessional or

MEMORANDUM DECISION AND ORDER-8

derogatory, "…plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement 2d of Torts, § 46, comment (d) (discussing intentional infliction of emotional distress claims). Castillo has not pointed to anything in the record indicating that Officer Klitch's statements were made pursuant to the ISP's policies toward disabled citizens. Accordingly, the Court will grant the motion for summary judgment regarding the negligent training claims.

## III.   ALL CLAIMS AS TO OFFICER COTTRELL

Finally, the Court will grant summary judgment on all claims against Officer Cottrell. Although pleadings must only give the opposing party fair notice of a claim and its basis, the plaintiff must at least allege "enough facts to state a claim to relief that is plausible on its face." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Here, Castillo has only alleged that Officer Cottrell performed a dog sniff around his car pursuant to Officer Klitch's request. Castillo's complaint is otherwise factually bare against Defendant Cottrell. Accordingly, the Court will grant summary judgment in favor of Officer Cottrell on all claims.

**ORDER**

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 11) is **GRANTED in part** and **DENIED in part**. It is granted with respect to the ADA claims, failure to train claims, and as to Officer Cottrell on all claims. It is denied as to Castillo's

MEMORANDUM DECISION AND ORDER-9

§ 1983 claim against Officer Klitch, as well as qualified immunity for Officer

Klitch, as explained on the record during oral argument.

DATED: August 17, 2016

B. Lynn Winmill
Chief Judge
United States District Court

MEMORANDUM DECISION AND ORDER-10